**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MARC WATERMAN, | : | |
| | : | Case No. _____ |
| Plaintiff, | : | |
| | : | <u>JURY TRIAL DEMANDED</u> |
| v. | : | |
| | : | **COMPLAINT FOR VIOLATION OF THE** |
| NATUS MEDICAL, INC., JOSHUA H. | : | **SECURITIES EXCHANGE ACT OF 1934** |
| LEVINE, THOMAS J. SULLIVAN, ILAN | : | |
| DASKAL, ERIC J. GUERIN, LISA | : | |
| WIPPERMAN HEINE, BRYANT M. | : | |
| MOORE, and ALICE D. SCHROEDER, | : | |
| | : | |
| Defendants. | : | |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

**NATURE OF ACTION**

1.      On April 17, 2022, Natus Medical, Inc. ("Natus" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") to be acquired by Prince Parent Inc. and Prince Mergerco Inc. (the "Proposed Merger").

2.      Under the terms of the Merger Agreement, Natus's stockholders will receive $33.50 in cash per share.

3.      On June 2, 2022, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4.      As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is and has been continuously throughout all relevant times the owner of Natus common stock.

9. Defendant Natus is a Delaware corporation. Natus's common stock is traded on the NASDAQ under the ticker symbol "NTUS."

10. Defendant Joshua H. Levin is Chairperson of the Board of Directors of Natus (the "Board").

11. Defendant Thomas J. Sullivan is President, Chief Executive Officer, and a member of the Board.

12. Defendant Ilan Daskal is a member of the Board.

13. Defendant Eric J. Guerin is a member of the Board.

14. Defendant Lisa Wipperman Heine is a member of the Board.

15. Defendant Bryant M. Moore is a member of the Board.

2

16. Defendant Alice D. Schroeder is a member of the Board.

17. Defendants identified in ¶¶ 10-16 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

18. Natus offers hardware, advanced software and algorithms, and consumables that provide stimulus, acquire and monitor physiological signals, and capture the body's response.

19. On April 17, 2022, Natus entered into the Merger Agreement.

20. The press release announcing the Proposed Merger provides as follows:

**Natus Medical Incorporated** (NASDAQ: NTUS), (the "Company" or "Natus"), a leading provider of medical device solutions to screen, diagnose, and treat disorders affecting the brain, neural pathways, and eight sensory nervous systems, announced today that it has entered into a definitive agreement to be acquired by an affiliate of ArchiMed ("ArchiMed"), a leading investment firm focused exclusively on the healthcare industry for approximately $1.2 billion. Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock, representing a 29% premium to the closing price of the Company's common stock on April 14, 2022.

"The sale of Natus Medical to ArchiMed will provide our shareholders with immediate and substantial cash value, as well as a compelling premium, and the Board has unanimously agreed that this transaction is in the best interests of our shareholders," said Joshua H. Levine, Chairman of Natus Medical, Incorporated."

"Our nearly 1,400 Natus Teammates remain committed to advance the standard of care and improve outcomes and quality of life for patients affected by disorders of the brain, neural pathways, and eight sensory nervous systems," said Thomas J. Sullivan, President & Chief Executive Officer of Natus Medical, Incorporated. "ArchiMed's mix of operational, medical, scientific and financial expertise will help us continue our mission to serve our customers while delivering immediate value to shareholders."

Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock they own. The transaction has fully committed equity financing from funds affiliated with ArchiMed and fully committed debt financing, and there are no financing conditions associated with the transaction.

Natus's Board of Directors has unanimously approved the merger agreement with ArchiMed and recommends that Natus's shareholders adopt the merger agreement. In connection with the transaction, the Company will prepare a proxy statement to be filed with the U.S. Securities and Exchange Commission ("SEC"). Following any review by the SEC, a definitive proxy statement will be mailed to shareholders of Natus. Natus expects to hold a Special Meeting of Shareholders to consider and vote on the proposed merger and the merger agreement as soon as practicable after the mailing of the proxy statement. The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including approval by Natus shareholders and receipt of regulatory approvals. Upon completion of the transaction, Natus will become a private company and Natus shares will no longer be listed on any public market.

Under the terms of the merger agreement, Natus may solicit proposals from third parties for a period of 30 days continuing through May 17, 2022, and in certain cases for a period of 35 days continuing through May 22, 2022. In addition, Natus may, at any time prior to receipt of shareholder approval, subject to the provisions of the merger agreement, respond to unsolicited proposals that constitute or would reasonably be expected to lead to a superior proposal. Natus will have the right to terminate the merger agreement with ArchiMed to enter into a superior proposal subject to the terms and conditions of such agreement, including payment of a customary termination fee. There can be no assurance that the solicitation process will result in a superior proposal or that any other transaction will be approved or completed. Natus does not intend to disclose developments with respect to this solicitation process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Preliminary Financial Results**

Revenue for the first quarter 2022 was $119.8 million, up 4.3% compared to $114.9 million in the first quarter 2021. During the first quarter of 2022, Natus incurred $3.4 million of extraordinary supply chain costs associated with acquiring semiconductors. The Company ended the quarter with $84 million in cash and no debt, up from $75.6 million at the beginning of the quarter. The Company will release its full 2022 first quarter financial results after the close of the market on Thursday, May 5th. The previously announced conference call scheduled for Friday, May 6th at 8:00 a.m. Eastern Time (5:00 a.m. Pacific Time) will be cancelled.

**Financial Guidance**

Due to the announced transaction, the Company will no longer update financial guidance.

**Advisors**

In connection with the transaction, Stifel is serving as a financial advisor to Natus, and Davis Polk & Wardwell LLP is serving as legal advisor to Natus.

21. On June 2, 2022, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

## Financial Projections

22. The Proxy fails to disclose material information regarding Natus's financial projections, specifically: the line items underlying the financial projections.

23. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

## Financial Analyses

24. The Proxy omits material information regarding the financial analyses conducted by Stifel.

25. Regarding Stifel's Selected Public Companies Analysis, the Proxy fails to disclose the individual multiples and metrics for the companies utilized by Stifel.

26. Regarding Stifel's Selected Precedent Transactions Analysis, the Proxy fails to disclose the individual multiples and metrics for the transactions utilized by Stifel.

27. Regarding Stifel's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values utilized by Stifel; and (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates utilized by Stifel.

28. Regarding Stifel's Premiums Paid Analysis, the Proxy fails to disclose: (i) the transactions utilized by Stifel; and (ii) the premiums paid in the transactions utilized by Stifel.

**Claim Against the Individual Defendants and Natus for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

29. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

30. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

31. Natus is liable as the issuer of these statements.

32. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

33. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

34. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

35. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

36. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

37. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

38.     Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

39.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of Natus within the meaning of Section 20(a) of the Exchange Act as alleged herein.

41.     Due to their positions as officers and/or directors of Natus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

44.     The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in the making of the Proxy.

45.     Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

47. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

48. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  June 6, 2022                     **GRABAR LAW OFFICE**

By:  _____/s/ Joshua H. Grabar_____
            Joshua H. Grabar (#5906953)
            One Liberty Place
            1650 Market Street, Suite 3600
            Philadelphia, PA 19103
            267-507-6085
            jgrabar@grabarlaw.com

            *Counsel for Plaintiff*